Good to see all of you. And Judge Gould is appearing from Seattle. Can you hear us, Judge Gould? Yes, Chief Judge Thomas. Good afternoon. Is the time set for argument in the case of Alston v. NCAA? We'll proceed with the appellants. Thank you, Chief Judge Thomas, and may it please the Court. I'm Seth Waxman representing the appellants. And with the Court's permission, I'm aspiring to reserve seven minutes for rebuttal in the case. The judgment below is starkly inconsistent with this Court's decision four years ago in O'Bannon and would redefine college sports as we know them. In O'Bannon, addressing a materially identical challenge to virtually the same amateurism rules, this Court held that those rules are pro-competitive and can be set aside only if the plaintiff bears the heavy burden of proving the existence of an alternative that is substantially less restrictive yet virtually as effective without significant costs. The plaintiffs did not introduce such evidence, and the alternative that the Court adopted is certainly not supported by it. Amateurism, as reflected in the NCAA's rules and recognized in O'Bannon, prohibits athletics-related compensation beyond covering legitimate expenses or modestly recognizing achievement. Yet the district court's injunction would permit colleges, sponsors, and boosters to recruit athletes with promises of internships that pay hundreds of thousands of dollars in cash, new cars to get to class. Colleges can promise to pay thousands of dollars in cash each year that any student athlete remains academically eligible to play and can also promise other lavish benefits unlimited, according to the Court's injunction, so long as they are somehow nominally related to education. O'Bannon should have barred this suit from the outset, but in any event, the trial court committed both legal and plain factual error at both steps two and three of the rule of reason analysis. First, as to step two, the legal error was twofold. Echoing O'Bannon, echoing Board of Regents rather, this Court held in O'Bannon that materially identical compensation regulations were pro-competitive because they, quote, preserved the popularity of the NCAA's product by promoting its understanding of amateurism. Mr. Waxman, I don't want to interrupt you too much here. Well, please, by all means. I've got to tell you, I have been very troubled by our O'Bannon case for a different reason than you, apparently. I would be very interested in your take on what is the relevant market here. It seems that the O'Bannon court, our court, and the district court in obedience to that concluded that basically what the consumer wants controls the market for those who are aspiring to be paid more. That's my take on it, and I'm troubled because I think the Supreme Court's Topco Associates case, our Paladin Associates case, D.C. Circuit Smith v. Pro Football, and so on, suggest that that's not appropriate, that we really ought not to be measuring the market in terms of some other market, i.e., in this case, consumer demand, but rather in terms of the offended seller. I don't think anybody disagrees that you've got an antitrust violation here. The question is, where does the rule of reason apply? How does it apply? And the market consideration, I think, is principal, isn't it? What's your take on that? So I think, Judge Smith, you are right that O'Bannon did hold that the pro-competitive benefit that essentially that the defendants established at Step 2 and that this court affirmed as warranting putting the burden on the plaintiffs to move to Step 3 was, in fact, that the NCAA rules create a differentiated product, amateur intercollegiate athletics, that is pro-competitive because it provides for consumer choice. And, of course, that's exactly what the Supreme Court explained in its Board of Regents decision when it said that the amateurism rules achieve the pro-competitive purpose of, quote, maintaining the integrity of collegiate sports as a distinct and attractive product, thereby widening consumer choice. So you're quite right that this court, echoing O'Bannon, and the same has been true for the decisions that we've cited in the third, fifth, seventh, and tenth circuits. Let's talk about regents. I know you're a Supreme Court scholar, so you'll have no trouble with regents. That was a long time ago. I actually had a cousin who was Solicitor General then before you that argued that very case. Yes, one of the greatest. And I just am troubled by the concept that somehow a competition between two, if you will, two competing athletic associations who want football rights somehow governs this case. I know some of the dicta of the court there is important, and it talked about the product and so on, and I think the district court here also picked up on that idea. But regents doesn't really control here, does it? Well, we think that O'Bannon controls here, and O'Bannon held as a matter of law that the NCAA's rules that make possible a differentiated product that is wildly popular satisfies the pro-competitive purpose of step two. Now, I will say that we took the position in front of Judge Wilkin that stare decisis and res judicata required a dismissal of this complaint. But in any event, the court denied that, and we sought to put on evidence showing that the market is in fact not the market that she concluded was the market in O'Bannon, but rather that the market was in fact what the Supreme Court has recognized in the American Express case as a multi-sided market that involves more than just athletes on the one side, on the one hand, and consumers on the other. If that's true, as you know well, the district court in this case found that, I want to be sure and get this correct here, that, for example, the changes that the NCAA made in its bylaws involved no analysis concerning consumer demand. It also held that when there was increased compensation after 2015 for the athletes, apparently not only did it not reduce consumer demand, but rather the demand went up. Under the circumstances, what's the best evidence that you have that the district court did not already consider that amateurism really does play a role in increasing demand for this product? So I don't think that even the district judge, I want to address the judge's findings or belief that there was some materially substantial change in the rules between the time that O'Bannon was decided and the time this case was tried because, as we've indicated and tried to explain in our reply brief, the answer is absolutely not. There is no material difference in the rules that existed at the time that O'Bannon was tried and argued and decided by this court and the time this case was tried or, for that matter, now. But even Judge Wilkin, both in O'Bannon and here, held that the plaintiffs, the defendants had satisfied their Step 2 burden because there is no question that the product that we provide, amateur intercollegiate sports, is pro-competitive because it provides for consumer choice. Under the Sherman Act, that is the definition of a pro-competitive purpose.
judges: Thomas, Gould, M. Smith Jr.